UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROKT US CORP. and ROKT PTE LTD., | |
| Plaintiffs, | |
| v. | Civil Case No. 1:23-cv-02081-LTS-HJR |
| ADSPOSTX, INC. d/b/a MOMENTSCIENCE, JON NOLZ, and SUROJIT NIYOGI, | |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/12/2025

**STIPULATION AND ORDER REGARDING THE FORMAT OF ELECTRONICALLY STORED INFORMATION AND DOCUMENT PRODUCTION**

This Stipulation and Order shall govern the format and procedure for the production of electronically stored information and related document production in this action.

**I.   Scope**

To the extent not unduly burdensome, the Parties shall produce documents and electronically stored information in the above-captioned action ("Action") in accordance with the agreed-upon specifications set forth below. The purpose of this Stipulation and Order is to promote an efficient and cost-effective process for conducting discovery pursuant to the Federal Rules of Civil Procedures. The procedures and protocols set forth below shall govern the discovery between the Parties in this Action. To the extent they do not contradict the provisions below, all applicable Federal, Local, and Court Rules are incorporated herein.

**II.   Definitions**

A.   "Electronically Stored Information" or "ESI" shall have the same meaning as used in Federal Rule of Civil Procedure 34(a)(1)(A) and includes, without limitation, all electronically stored information.

B. "Document" shall have the same meaning as used in Federal Rule of Civil Procedure 34(a)(1)(A) and includes, without limitation, all ESI.

C. "Format" means the internal structure of an electronic file which defines the way it is stored and accessed.

D. "Native Format" means the Format of a Document or ESI in the application in which such Document or ESI was originally created.

E. "TIFF Format" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions, identified in Appendix A.

F. "Email" means an electronic means for communicating written information through structured data applications (*i.e.*, email client software, electronic mail) that can send, store, process, and receive information.

G. "Paper Documents" means any Document or thing discoverable under Federal Rules of Civil Procedure 26(b)(1) and 34(a)(1)(A) that is not ESI. A Document is only considered to fall within the Paper Documents if its ordinary course version that was collected from the custodian was in hard copy form.

H. "Party" means with respect to the above-captioned Plaintiffs—all Plaintiffs collectively—and with respect to the above-captioned Defendants—all Defendants collectively. For the avoidance of doubt, if the custodians with responsive Documents use different Email domain names within Plaintiffs' or Defendants' organizations, nothing herein shall eliminate the obligation to search all such Email accounts.

I. "Parties" mean all named Plaintiffs and Defendants in this Action.

J. "Producer" or "Producing Party" means a Party who produces information via the discovery process in this Action.

K.   "Recipient" or "Receiving Party" means a Party who receives information via the discovery process in this Action.

## III.   ESI Disclosures

The Parties will meet and confer regarding the most appropriate method or methods for that Party to search, collect, cull, and produce Documents responsive to discovery, including:

A.   **Custodians.**   The custodians most likely to have discoverable ESI in their possession, custody, or control.  The custodians shall be identified by name, title, general relevance to the instant litigation, and the type of the information under his/her control.  The Parties will discuss limits on the number of custodians that can be searched without further consultation or showing of good cause.

B.   **Non-custodial data sources.**   A list of non-custodial data sources (*e.g.*, shared drives, servers, etc.), if any, likely to contain discoverable ESI.

C.   **Third-Party Data Sources.**   A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party Email and/or mobile device providers, "cloud" storage, etc.) and for each such source, indicate the extent to which a Party is (or is not) able to preserve information stored in the third-party data source.

D.   **Inaccessible Data.**   A list of data sources, if any, reasonably likely to contain discoverable ESI (by type, date, custodian, electronic system, or other criteria sufficient to specifically identify the data source) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).  Note: Section IV below sets forth data sources and ESI which are not required to be preserved by the Parties.  Those data sources and ESI do not need to be included on this list.  Nothing in this Stipulation and Order shall preclude either Party from identifying additional data sources including additional sources of inaccessible data.  Further, nothing in these

disclosures shall waive any rights to object to the production of any particular ESI from any listed source.

      E.    **Search Terms.** A written list of proposed search terms, which shall contain the search terms a Party reasonably believes would lead to the identification of Documents from custodial data and other proposed data sources that are responsive to the opposing Party's discovery requests. Each Party may use search terms to locate potentially relevant Documents for collection and/or culling after collection. The Parties will discuss limits on the number of search terms that can be searched without further consultation or showing of good cause. The Parties shall disclose the search terms used upon request. The Parties agree to continue to act in good faith in negotiating search terms to be used.

      F.    **Search Methodology.** Any restrictions or filters, including file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information.

      G.    The Parties may jointly agree to modify the search terms without the Court's leave.

      H.    The Parties may jointly agree to modify the name and number of custodians without the Court's leave.

**IV.    Documents Not Reasonably Accessible**

The following sources of ESI are not reasonably accessible pursuant to Federal Rules of Civil Procedure 26(b)(2)(B), and do not warrant preservation, review, or production:

      A.    "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

      B.    random access memory (RAM) or other ephemeral data;

      C.    online access data such as temporary Internet files, history, cache, cookies, etc.;

  D. data in metadata fields that are frequently updated automatically, such as last-opened dates;

  E. backup data that is substantially duplicative of data that is more accessible elsewhere; and

  F. other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business;

*provided, however*, that nothing prevents the Parties' agreement to, or the Court's order (upon its own or a Party's motion), requiring the preservation and/or discovery of one or more of these sources.

**V.** **Production Format**

  A. **Productions as Kept in Usual Course of Business.**  The Parties agree that they will make productions of Documents and/or ESI as they are kept in the usual course of business and in a reasonably usable form, pursuant to Federal Rule of Civil Procedure 34(b)(2)(E).  All Documents and any attachments or affixed notes shall be maintained as they existed when collected by the Producing Party.  The Parties agree to meet and confer if an objection is made that a production is not in a reasonably usable form.

  B. **ESI Production.**  The Parties shall produce ESI in the form set forth in Appendix A.  Production of ESI shall comply with Federal Rules of Civil Procedure 34 and 45 to the extent they are not overridden by this Stipulation and Order.

  C. **Hard-Copy Production.**  Paper Documents that are being produced in discovery shall be scanned and produced in electronic Format in the form set forth in Appendix A.

  D. **Computer Source and Compiled Code.**  To the extent source code or compiled code is relevant, computer source code and computer compiled/object code shall be produced

pursuant to the agreed to procedures to be set forth in the Protective Order and/or an addendum thereto.

E. **Native Format.** If converting a Document into a TIFF Format pursuant to Appendix A is impracticable or unreasonable—including but not limited to video, animation, or audio files, lengthy Excel spreadsheets, and any log files—the Producing Party shall produce such Document in Native Format in a manner that preserves the integrity of the files. No Document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the Document before its collection. The Parties shall produce Native Files in the manner set forth in Appendix A.

F. **Production Schedule.** The Parties acknowledge that rolling productions may be utilized and agree to confer in good faith to reach a mutually agreeable production schedule that will allow them to complete production of Documents and other data in advance of depositions.

G. **Redactions.** The Parties shall redact in accordance with Appendix A.

H. **Delivery Format.** The Parties' productions will be made via external hard drives, or through a secure, online file sharing tool. The Parties will attach a label to each piece of production media that provides: (a) the caption of the case, (b) the date of the production, (c) volume number, and (d) Bates range of Documents on the media. The Parties' productions will be made in an encrypted/secure format, utilizing either encrypted hard-drives, a secure File Transfer Protocol ("FTP") site, and/or password protection, or, for small productions, a software encryption program that outputs a self-extracting file.

I. **Costs.** All costs of collecting, filtering, processing, and production of responsive ESI with the load files as set forth in this Stipulation and Order will be borne by the Producing Party. Notwithstanding this provision, the Parties reserve their rights to seek an order from the

Court apportioning the costs of discovery among the Parties or shifting the costs to the requesting Party, including but not limited to discovery of ESI that is not reasonably accessible, upon a showing of unequal burdens, unreasonable or disproportionate requests, or other good cause pursuant to the applicable Federal Rules and Local Rules.

J.      **Bates Numbers.**  Each Producing Party shall affix Bates labels and numbers in accordance with the practice identified in Appendix A.

K.      **Duplicates.**  A Producing Party who has more than one identical copy of an Document (*i.e.*, the Documents are actual duplicates) need only produce a single copy of that Document.  The Parties agree to supplement or append the delivered metadata to reflect full custodial references to any de-duplicated Documents (typically by listing all other custodians who were in possession of duplicate copies of those Documents).  A Producing Party may de-duplicate its Document population across the entirety of the information collected, or by custodian, pursuant the process identified in Appendix A.

L.      **Databases.**  To the extent discovery requires production of ESI contained in a database, the Producing Party shall produce reports or spreadsheets consisting of those database fields containing relevant information in a Format that is technically and economically feasible and reasonable depending on the database involved and the information sought.

M.      **Language.**  If any Document exists in more than one language, the Document shall be produced in English, if available.  If no English version of a Document is available, the Producing Party does not have an obligation to produce an English translation of that Document and does not have an obligation to render that Document text-searchable via optical character recognition ("OCR") or other means.

N.      **Third-Party Software.**  Each Party is individually responsible for obtaining any third-party software necessary to render and/or view any Documents produced in this Action, unless the Parties otherwise agreed in the Protective Order.

VI.     **Privilege Logs**

A.      ESI and Documents that are responsive and proportional to the needs of the case but that are withheld from production based on attorney-client privilege, the work product doctrine, or other recognized privileges and protections ("Privileged Material"), in part due to a redaction or in their entirety, shall be identified in a privilege log that will be produced to the Requesting Party in accordance with Federal Rule of Civil Procedure 26(b)(5)(A).

B.      The log will be produced as an Excel file.  To the extent that an itemized privilege log is appropriate—*i.e.*, such a log is not unduly burdensome due to the volume of privileged Documents—the itemized log should contain the following fields of information for each Document or ESI containing Privileged Material:

1. "Date": Lists the date the Email was sent, or the date the Document was last modified;

2. "Custodian": Identifies the individual the Document was obtained from:

3. "From": Lists the contents of the "From" field of the Email, or the author field of a Document;

4. "To": Lists the contents of the "To" field of the Email, or the indicated recipient of the communication;

5. "CC": Lists the contents of the "CC" (carbon copy) field of the Email, or the indicated carbon copy recipients of the communication;

6. "BCC": Lists the contents of the "BCC" (blank carbon copy) field of the Email, or the indicated carbon copy recipients of the communication;

7. "Subject": Lists the subject line of the Email (or describes the subject if disclosure of the Email's subject line would in itself disclose privileged matter);

        8.      "Attachments": Indicates by way of a "Y" for yes or "N" for no whether the Document had attachments—the attachments do not need to be separately logged;

        9.      "Redacted": Indicated by way of a "Y" for yes or "N" for no whether the Document has been redacted;

        10.     "Document Description": Sufficient information as to the nature of the document so that the Receiving Party is able to fairly evaluate the claim of privilege; and

        11.     "Basis for Claim of Privilege": Each basis for the claim of privilege—*e.g.*, "Attorney-Client Privilege" or "Work Product Doctrine."

      C.      With respect to attorney work product information or privileged communications solely between a Party and the Party's outside counsel in this lawsuit generated after the filing of the Complaint on March 10, 2023, the Parties are not required to include any such information in privilege logs.

      D.      The Parties agree that where Emails contain multiple privileged communications in the same Email string, as the result of responses and/or forwarding, the Producing Party need only include one entry on the privilege log for the entire Email chain and need not log each Email contained in the chain separately. The privilege log shall expressly identify if an entry contains multiple privileged communications that are not being separately logged.

      E.      Production of all Documents and ESI in this Action, whether inadvertent or otherwise, shall be without prejudice to and shall not waive, for purposes of this Action or otherwise, any attorney-client privilege or work product protection that otherwise would apply. This non-waiver provision should be interpreted to provide the broadest privilege protection allowable under Federal Rule of Evidence 502, including expressly 502(d), and any applicable case law. The analysis of whether a disclosure of Privileged Material was inadvertent, whether the holder of the privilege took reasonable steps to prevent disclosure, and whether the holder of

the privilege promptly took reasonable steps to rectify the error under Federal Rule of Evidence 502(b) shall not apply and is irrelevant in this Action.

  F. If a Party discovers that it has produced or received Privileged Material, it shall provide written notice to the opposing Party. Upon the discovery by the Receiving Party or Producing Party that (1) a production includes information that appears on the face of a produced document to be Privileged Material, (2) the Party learns its received Privileged Material, or (3) the Party receives any written notice from the Producing Party identifying the production of any Privileged Material, the Receiving Party shall promptly return or destroy the subject Privileged Material and any copies that it has. If the Receiving Party disclosed the subject Protected Information to any third party before receiving written notice from the Producing Party, the Receiving Party must take reasonable steps to retrieve it and shall immediately advise the Producing Party of any instances in which the Receiving Party is unable to retrieve the Protected Information so the Producing Party may take whatever steps it deems necessary to protect and/or retrieve the Protected Information.

## VII. Processing of Third-Party Documents

  A. A Party that issues a non-party subpoena after the date this Stipulation and Order is entered by the Court ("Issuing Party") shall include a copy of this Stipulation and Order with the subpoena and request that the non-party produce Documents in accordance with the specifications set forth herein. If a Party issued a non-party subpoena prior to the Court's entry of this Stipulation and Order, that Party shall promptly forward a copy of this Stipulation and Order to the non-party and request that the non-party produce Documents in accordance with the specifications set forth herein.

B. The Issuing Party is responsible for producing to all other Parties to the Action any Documents obtained pursuant to a subpoena. If a non-party fails to produce Documents in accordance with the specifications set forth herein, the Issuing Party shall undertake reasonable efforts to conform the non-party's production to the specifications described herein, and shall assign a unique identification number to each Document. Nothing in this Stipulation and Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## VIII. Waiver

Nothing herein shall be construed to affect the discoverability or admissibility of any Document or ESI. All objections to the discoverability or admissibility of any Document or ESI are preserved and may be asserted at any time.

## IX. Modifications

This ESI Order may be modified by the Parties by written agreement, but such modification shall have no force or effect unless approved by the Court. The Parties shall meet and confer in good faith to discuss a Party's proposed modifications to this Stipulation and Order.

## X. Resolution of Disputes

The Parties shall meet and confer in good faith to resolve any disputes that may arise under this Stipulation and Order. If the Parties cannot reach agreement on a disputed matter, they shall submit the matter to the Court pursuant to this Court's Local Rules and Orders entered in this Action.

Respectfully submitted this 10th day of November, 2025.

| | |
|---|---|
| /s/ Tomasita L. Sherer | /s/ Michael M. Powell |
| Tomasita L. Sherer<br>Sara Gates<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, NY 10020-1089<br>Phone: (212) 398-4871<br>Fax: (212) 768 6800<br>tomasita.sherer@dentons.com<br>sara.gates@dentons.com<br><br>Kirk R. Ruthenberg (admitted *pro hac vice*)<br>DENTONS US LLP<br>1900 K Street, N.W.<br>Washington, DC 20006<br>Phone: (202) 496-7500<br>Fax: (202) 496-7756<br>kirk.ruthenberg@dentons.com<br><br>*Attorneys for Plaintiffs Rokt US Corp. and Rokt Pte Ltd.* | Andrew Gish<br>Michael M. Powell<br>GISH PLLC<br>41 Madison Avenue, Floor 31<br>New York, NY 10010<br>(212) 518-2000<br>andrew@gishpllc.com<br>michael@gishpllc.com<br><br>*Attorneys for Defendants AdsPostX, Inc d/b/a MomentScience., Jon Nolz, and Surojit Niyogi* |

Dated: November 12, 2025
      New York, New York

SO ORDERED.

_____
HENRY J. RICARDO
United States Magistrate Judge

Appendix A

1) **Specifications for the Production of ESI.**

   ESI produced by the Parties should be provided in the following format:

   i. **TIFF Format.** All ESI, with the exception of Excel spreadsheets and PowerPoints, will be produced in TIFF, black-and-white single page 300dpi Group IV format. Excel spreadsheets, PowerPoints, and any other type of file that is not readily converted to readable TIFF shall be produced in its Native Format. ESI collected in container files (including, without limitation, .ZIP, .RAR, and .PST) should be produced in TIFF (or the Native Format of each individual Document if a spreadsheet or PowerPoint), with a reference that the files were originally part of a container.

   ii. **Database Load Files/Cross-Reference Files.** Documents should be provided with (1) a Concordance or Relativity delimited file (.DAT) and (2) an Opticon (.OPT) delimited file.

   Example of Concordance or Relativity Delimited File:

   pBegDocp¶pEndDocp¶pAttachRangep¶pCustodianp

   The objective coding and/or electronic file metadata should be provided in the following format:

   - Fields should be delimited by the default Concordance or Relativity field delimiter for ANSI character 20 (¶). String values within the fields file should be enclosed with a text delimiter for ANSI character 254 (ρ).

   - The first line should contain objective coding and or electronic file metadata headers and below the first line there should be exactly one line for each Document.

   - Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row.

   - Each return and new line in full text fields shall be marked by the Concordance or Relativity default delimiter of ANSI character 174 (®).

   - Multi-values should be separated by a semicolon(;).

   Examples of Option Delimited File:

   ABC0000001,ABC001,D: \IMAGES\ 001 \ ABC0000001. TIFF, Y,,,3
   ABC0000002,ABC001,D: \IMAGES\ 001 \ ABC0000002. TIFF,,,,,
   ABC0000003,ABC001,D: \IMAGES\ 001 \ ABC0000003.TIFF,,,,,
   ABC0000004,ABC001,D: \IMAGES\ 001 \ ABC0000004. TIFF ,Y,,,2

        ABC0000005,ABC001,D: \IMAGES\ 001 \ ABC0000005. TIFF,,,,,

iii. **Slip Sheets.** Each Document produced in Native Format shall be accompanied by a slip sheet. That sheet will be endorsed with the Bates number for the Document. It may also include the confidentiality and redaction designations, if any.

iv. **Redactions.** Where Documents are redacted, the ESI items shall be produced in TIFF Format with the OCR text for the unredacted portion of the Document. The metadata fields listed below will be provided to the extent they exist and do not also need to be redacted.

If the redacted Document is a PowerPoint-type presentation or Excel-type spreadsheet and the TIFF file generated from the Document would exceed 100 pages in length, the file shall be produced in a "modified native" format. Under the "modified native" format, the Producing Party would delete the redactable information and replace it with "REDACTED" or "REDACTED BY COUNSEL." The "modified native" Document would be produced with the metadata for the original Document. For any Document produced in this fashion, the Producing Party must preserve a copy of the original, unredacted Document.

v. **De-duplication**. Parties may de-duplicate, using a verifiable process, Documents across custodians. This would result in only one unique copy of a Document being produced. For Email, de-duplication may be performed on the basis of full families, meaning that Emails would be treated as duplicates only if they are identical in both their bodies and in all their attachments. An Email attachment will not be treated as a duplicate merely because an identical copy of the Document exists as a separate file.

ESI duplicates may be identified by using industry standard MD5 or SHA-1 algorithms to create and compare hash values for exact matches.

The Parties agree that even though a Document may have been exchanged between counsel prior to the commencement of the litigation, the Parties will reproduce any such Documents in the course of discovery in the litigation.

vi. **Email Threading.** The Parties may use analytics technology to identify Email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon a reasonable written request for specific Document(s), the Producing Party will produce a less inclusive copy.

vii. **De-NIST.** To reduce the number of irrelevant files in their respective data collections, each Party may remove files from the Document set to the extent those files have hash values that match those file hashes appearing on the National Software Reference Library list, maintained by the National Institute of Standards and Technology. This process is commonly referred to as "deNISTing." Each

    Party agrees that, to the extent that it does deNIST its data, it will do so using a verifiable process and may do so before any data reaches the review stage.

viii. **Metadata Fields**.  The metadata fields listed below will be provided if they exist and can be extracted through an automated process.

   The Parties understand that there may be instances in which the Custodian may be the name of a source (*e.g.*, the name of the database), as opposed to a person's name.

ix. **Databases.**  Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor proportional to the needs of the case.  Thus, a Party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table.  These reports or data tables will be produced in a static image format.  To the extent that relevant and responsive reports or data tables derived from a database were also maintained in static form (*e.g.*, as a PDF attachment or a hard copy in a file), those Documents will be produced as static images consistent with the specifications for production of paper.

x. **Extracted Text.**  Along with the Native Format or TIFF file for each ESI, the Producing Party shall also provide the extracted text, or, if extracted text is not available (as in the case of a non-searchable pdf or TIFF imaged Document) then OCR text along with a Control List file to facilitate exporting.  Separate .TXT files will be organized at the Document level and named with the corresponding production file name.  The path to the text file will be included in the load file.

xi. **Time Zone.**  All Email files shall be processed using the Coordinated Universal Time (UTC) time zone.

**2)** **Specifications for the Production of Paper Documents.**

Paper Documents produced by either of the Parties should be provided in the following format:

 i. **TIFFs.**  Single page 300dpi CCITT Group IV black-and-white TIFFs should be provided with page breaks at Document end.

 ii. **Color.**  The Parties will accommodate reasonable requests for the production of specific images in color.

 iii. **Unique IDs.**  Each image should have a unique file name that will be the Bates number of that page.  The Bates number must appear on the face of the image in the lower right corner (*e.g.*, ABC0000001).

 iv. **Confidentiality Designation.**  Any confidentiality designation (*e.g.*, Confidential, Highly Confidential – Attorneys' Eyes Only, must appear on the face of the image.

      v.      **OCR.** The Parties will provide OCR for all hard copy Documents produced.

      vi.      **Unitizing of Documents.** When scanning Paper Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (*i.e.*, Paper Documents should be logically unitized). The Parties will make reasonable commercial efforts to have their vendors unitize Documents correctly and will commit to address situations where there are improperly unitized Documents.

      vii.      **Database Load Files/Cross-Reference Files.** Documents should be provided with (1) a Concordance or Relativity delimited file, and (2) an Opticon delimited file.

Example of Concordance or Relativity Delimited File:

ρBegDocρ¶ρEndDocρ¶ρAttachRangeρ¶ρCustodianρ

The objective coding and/or electronic file metadata should be provided in the following format:

- Fields should be delimited by the default Concordance or Relativity field delimiter for ANSI character 20 (¶).

- String values within the fields file should be enclosed with a text delimiter for ANSI character 254 (ρ).

- The first line should contain objective coding and or electronic file metadata headers and below the first line there should be exactly one line for each Document.

- Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row.

- Each return and new line in full text fields shall be marked by the Concordance or Relativity default delimiter of ANSI character 174 (®).

- Multi-values should be separated by a semicolon (;).

Example of Opticon Delimited File:

ABC0000001,ABCOO1,D: \ IMAGES\ 001 \ ABC0000001.TIFF,Y,,,3
ABC0000002,ABC001,D: \ IMAGES\ 001 \ ABC0000002.TIFF,,,,,
ABC0000003,ABC001,D: \ IMAGES\ 001 \ ABC0000003.TIFF,,,,,
ABC0000004,ABC001,D: \ IMAGES\ 001 \ ABC0000004.TIFF,Y,,,2
ABC0000005,ABC001,D:\ IMAGES\ 001 \ ABC0000005.TIFF,,,,,

      viii.      **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent Document), to the extent they can be reasonably determined, must be preserved.

    ix.    **Objective Coding Fields.** The following objective coding fields should be provided to the extent determinable: (i) Beginning Bates Number; (ii) Ending Bates Number; (iii) Beginning Attachment Number; (iv) Ending Attachment Number; (v) Attachment Range Bates Numbers; and (vi) Custodian.

3) **Metadata Fields**

The database load files for all productions shall contain the following fields to the extent they apply to each Document:

| Field Name | Description/Comments | Fields for ESI and/or Paper Copy |
|---|---|---|
| BEG_NO | Bates number associated with the first page of a Document | ESI and Paper Copy |
| END_NO | Bates number associated with the last page of a Document | ESI and Paper Copy |
| CUSTODIAN | Description of who provided the Document. Multiple custodians will be separated by a semi-colon. | ESI and Paper Copy |
| Custodians(All) | List all file paths of a produced document to accommodate and reflect the above. "All folder paths..." | ESI and Paper Copy |
| BEG_ATTACH | Beginning Attachment number for parent and children. The number should be BEG NO of the parent. | ESI and Paper Copy |
| END_ATTACH | Ending Attachment number for parent and children. The number should be END NO of the last child. | ESI and Paper Copy |
| DOC_TYPE | Identifies the type of Document produced (Email, Attachment, Edoc, or Hard Copy). | ESI and Paper Copy |
| REDACT | Y or N will be noted in this field. This field defines whether or not a Document contains redactions or not. | ESI and Paper Copy |

| CONFIDENTIALITY VALUES | This field defines whether or not a Document has been designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code." | ESI and Paper Copy |
|---|---|---|
| FILE_EXT | File extension of native file (*e.g.*, XLS, DOC) | ESI |
| FILE_NAME | Original file name of native file | ESI |
| PAGE_COUNT | Number of pages per electronic Document. NOTE: Not all electronic Documents have this field.<br><br>To the extent it exists, it is extracted. This is an electronically populated field that is based on the machines estimate. | ESI |
| HASH | The Hash value or "de-duplication key" assigned to a Document. The Parties will use MD5 or SHA1 Hash value for this unique identifier. PID's for Email families should also be preserved. | ESI |
| DOC_LINK | Full relative path to the current location of the native or near-native Document. | ESI produced in native |
| FILE_PATH | Folder path of where Documents came from on server—when collected. Include the letter of the drive, path information through to the extension of the file. | ESI |
| File_Path(All) | List all file paths of a produced document to accommodate and reflect the above. "All folder paths..." | ESI |

18

| TITLE | Title of Document. NOTE: Not all ESI have this field. For example, a scanned Paper Document will not have any metadata. | ESI |
|---|---|---|
| AUTHOR | Author of a Document. NOTE: Not all ESI have this field. For example, a scanned Paper Document will not have any metadata. | ESI |
| CREATE_DATE | Creation date of the native file. Must be in mm/dd/yyyy format. | ESI |
| TIME_CREATED | Creation time of the native file. | ESI |
| DATE_LAST-MOD | Date native file was last modified. Needs to be in mm/dd/yyyy format. | ESI |
| TIME_LAST_MOD | Time native file was last modified. | ESI |
| FULLTEXTPATH | The path of the full text files for each Document. | ESI |
| MESSAGID | The Email Message ID. | ESI (Email) |
| SUBJECT | Information from the Subject line of the Email message. | ESI (Email) |
| FROM | Author of Email message. | ESI (Email) |
| TO | Recipients of the Email message. | ESI (Email) |
| CC | Recipient of carbon copies of the Email message. | ESI (Email) |
| BCC | Recipient of blind carbon copies of the Email message. | ESI (Email) |
| DATE_SENT | Sent date of an Email message. Must be in mm/dd/yyyy format. | ESI (Email) |
| TIME_SENT | Sent time of an Email message. | ESI (Email) |

| DATE_RCVD | Received date of an Email message. Needs to be in mm/dd/yyyy format. | ESI (Email) |
|---|---|---|
| TIME_RCVD | Received time of an Email message. | ESI (Email) |