**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROKT US CORP. and ROKT PTE LTD., <br><br> Plaintiffs, <br><br><br><br> v. <br><br> ADSPOSTX, INC. d/b/a MOMENTSCIENCE, JON NOLZ, and SUROJIT NIYOGI, <br><br> Defendants. | Civil Action No.: 1:23-02081-LTS |

## DEFENDANTS' MOTION FOR LEAVE TO FILE A FIRST AMENDED ANSWER AND COUNTERCLAIMS

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

I.    FACTUAL BACKGROUND ...................................................................................... 2

II.   LEGAL STANDARD................................................................................................. 7

III.  ARGUMENT ............................................................................................................. 8

    A.    *Defendants Have Not Unduly Delayed in Asserting the Counterclaims.* ...................... 8

    B.    *Rokt Has No Grounds to Suggest that Defendants Act in Bad Faith or with a Dilatory Motive.* ......................................................................................................................... 10

    C.    *Rokt Cannot Demonstrate that It Will Sustain Prejudice from Amendment.*................ 13

    D.    *Rokt Will Be Unable to Show that the Counterclaims Are Futile.*................................ 15

IV.   CONCLUSION......................................................................................................... 22

## **TABLE OF AUTHORITIES**

### **CASES**

*AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*,
   626 F.3d 699 (2d Cir. 2010) ------------------------------------------------------------------- 13

*AP-Fonden v. Goldman Sachs Group, Inc.*,
   No. 18-CV-12084 (VSB) (KHP),
   2023 U.S. Dist. LEXIS 132558 (S.D.N.Y. July 31, 2023) -------------------------------- 8, 13

*AT&T Corp. v. Atos IT Solutions & Services, Inc.*,
   714 F. Supp. 3d 310 (S.D.N.Y. 2024) ----------------------------------------------------- 10, 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) -------------------------------------------------------------------------- 15

*Brous v. Eligo Energy, LLC*,
   No. 24-cv-01260 (ER), 2025 LX 357444 (S.D.N.Y. Sept. 12, 2025)----------------------------- 13

*Dalewitz v. The Procter & Gamble Co.*,
   No. 22-cv-07323 (NSR), 2025 LX 273221 (S.D.N.Y. Mar. 11, 2025) --------------------------- 10

*Duling v. Gristede's Operating Corp.*,
   265 F.R.D. 91 (S.D.N.Y. 2010) ------------------------------------------------------- 10, 11, 13

*Dziennik v. Sealift, Inc.*,
   No. CV 2005-4659 (DLI) (MDG),
   2009 U.S. Dist. LEXIS 141398 (E.D.N.Y. Apr. 1, 2009) ------------------------------------ 12

*GMO Gamecenter USA, Inc. v. Whinstone US, Inc.*,
   No. 22-CV-5974 (JPC) (KHP), 2025 LX 310188 (S.D.N.Y. Aug. 26, 2025) ------------------- 21

*Great Western Insurance Co. v. Graham*,
   No. 18-CV-06249-LTS-SN, 2026 LX 66393 (S.D.N.Y. Jan. 6, 2026) --------------------------- 15

*Ideavillage Products Corp. v. Copper Compression Brands LLC*,
   No. 20 Civ. 4604 (KPF), 2021 U.S. Dist. LEXIS 208659 (S.D.N.Y. Oct. 27, 2021)----------- 14

*In re General Electric Co. Securities Litigation*,
   No. 09 Civ. 1951 (DLC), No. 09 Civ. 1951 (DLC), 2012 U.S. Dist. LEXIS 100584 (S.D.N.Y.
   July 12, 2012)--------------------------------------------------------------------------- 11

*IQ Dental Supply, Inc. v. Henry Schein, Inc.*,
   924 F.3d 57 (2d Cir. 2019)------------------------------------------------------------- 19, 20, 21

ii

*Kate Spade LLC v. Vinci Brands LLC*,
   No. 23-cv-5409 (LGS) (VF), 2024 LX 181098 (S.D.N.Y. Oct. 9, 2024) ----------------------- 10

*Lucente v. International Business Machines Corp.*,
   310 F.3d 243 (2d Cir. 2002) ------------------------------------------------------------------ 15

*Mason Tenders District Council of Greater New York v. Phase Construction Services, Inc.*,
   318 F.R.D. 28 (S.D.N.Y. 2016) ---------------------------------------------------------------- 13

*Monahan v. New York City Department of Corrections*,
   214 F.3d 275 (2d Cir. 2000) -------------------------------------------------------------------7

*Parker v. Columbia Pictures Industries*,
   204 F.3d 326 (2d Cir. 2000) -------------------------------------------------------------------7

*Particle Health Inc. v. Epic Systems Corp.*,
   No. 24 Civ. 7174 (NRB), 2025 LX 335977 (S.D.N.Y. Sep. 5, 2025)--------------- 15, 16, 17, 20

*Pilkington North America, Inc. v. Mitsui Sumitomo Insurance Company of America*,
   No. 18 Civ. 8152 (JFK), 2021 U.S. Dist. LEXIS 208698 (S.D.N.Y. Oct. 27, 2021) -------- 8, 10

*Reiss v. Audible, Inc.*,
   No. 1:24-cv-05923 (JLR), 2025 LX 192043 (S.D.N.Y. June 11, 2025) --------------------- 17, 22

*Reyes v. Yager Esthetics Estetica*,
   No. 24-CV-3206 (JGK) (VF), 2025 LX 248847 (S.D.N.Y. Apr. 21, 2025) -----------------------8

*Sacerdote v. New York University*,
   9 F.4th 95 (2d Cir. 2021)------------------------------------------------------------------- 1, 7

*State Trading Corp. v. Assuranceforeningen Skuld*,
   921 F.2d 409 (2d Cir. 1990) ------------------------------------------------------------------ 11

*United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare
   Fund v. Takeda Pharmaceutical Co. Ltd.*,
   11 F. 4th 118 (2d Cir. 2021) ----------------------------------------------------------------- 17

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ------------------------------------------------------------------------- 15

*United States v. Visa, Inc.*,
   788 F. Supp. 3d 585 (S.D.N.Y. 2025) ------------------------------------------------- 17, 18, 19

*Virgin Atlantic Airways v. British Airways Plc*,
   257 F.3d 256 (2d Cir. 2001) ------------------------------------------------------------------ 18

*Walsh v. Versa Cret Contracting Co.*,
   No. 21-CV-05697 (JMA) (JMW), 2023 U.S. Dist. LEXIS 87517 (E.D.N.Y. May 18, 2023) - 12

## PRELIMINARY STATEMENT

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Local Civil Rule 15.1, and the operative scheduling order (ECF No. 143, "Scheduling Order"), Defendants AdsPostX, Inc. d/b/a MomentScience ("MomentScience"), Jon Nolz, and Surojit Niyogi (collectively, "Defendants") hereby move for leave to amend their answer (ECF No. 137) to assert counterclaims on behalf of MomentScience. This is Defendants' first request for leave to amend since filing their answer in September.

Through the proposed amended pleading, Defendant MomentScience seeks to assert claims under the Sherman Act based on the plaintiffs' (collectively, "Rokt") anticompetitive conduct, pursuant to which Rokt has dominated the market for post-transaction advertising services in which both it and MomentScience compete. Rokt's efforts to "lock up" customers, including by using predatory, below-cost pricing, has quashed competition and entrenched Rokt's monopolist position, injuring both MomentScience and competition within the market as a whole. Its conduct is exactly of the sort targeted by this country's antitrust laws, and MomentScience is well placed to challenge them through the assertion of counterclaims in this action, with this motion more than meeting the "permissive" and "liberal" standard of Rule 15(a)(2). *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).

Rokt has indicated that it intends to oppose Defendants' motion, but it has no basis for doing so. Defendants have not unduly delayed in bringing their motion, which they bring only a few months after their initial filing of their answer, and which was in part spurred by and depends on events post-dating that filing. Nor do they act in bad faith; as the proposed pleading indicates (attached to the accompanying transmittal declaration of Michael M. Powell ("Powell Decl.") as Exhibit A ("Counterclaims")), MomentScience has legally colorable claims and Defendants have

been consistent in seeking to call Rokt to account for them since the outset of this litigation. Rokt's contention otherwise appears to be based on speculation that, because Rokt is unhappy about MomentScience's assertions of these claims, MomentScience must have asserted them just to make it unhappy. But this is without basis. So too is any suggestion that Defendants act with a dilatory motive or in a manner that will prejudice Rokt. They proffer the Counterclaims early in the case and do not currently anticipate that the Counterclaims would delay or impede the progression of this litigation. And Rokt's position that the Counterclaims are futile is likewise groundless. During the preliminary injunction phase of the case, Rokt argued strenuously before this Court that it was a monopolist whose monopoly MomentScience threatened to disturb. That legal position imbues its conduct with antitrust implications, transforming what might otherwise be permissible action into actionable unlawful competition. As the Counterclaims more than establish, Rokt has engaged in conduct—a "lock-up" campaign and the leveraging of predatory, below-cost pricing mechanisms—designed to maintain its dominant position, and lessen competition, in the market. The nature of that position and that market is such that its actions run afoul of the Sherman Act, and the Counterclaims therefore are not futile. Defendants' motion should be granted.

## I.    FACTUAL BACKGROUND

As Rokt itself alleges, Rokt and MomentScience are "direct competitors." (*See* ECF. No. 1 ("Compl.") ¶1.) Both it and MomentScience provide platforms pursuant to which ecommerce companies display third-party advertisements to their customers. (*See id.* ¶¶6, 7, 23, 68.) Rokt commenced this action nearly three years ago, alleging that Defendants (MomentScience and its two cofounders) had misappropriated its trade secrets and engaged in unfair competition based primarily on one defendant having previously interacted with Rokt while employed by a Rokt customer. (*See id.* ¶¶1, 38-54.) Alongside its complaint, Rokt filed a proposed order to show cause for preliminary injunction. (*See* ECF No. 7.) In connection with its preliminary injunction

request, Rokt repeatedly claimed that it had created a new category of ecommerce advertising (*i.e.*, operation of a platform offering third-party post-transaction advertisements to ecommerce customers) and had been alone offering those services until the establishment of MomentScience. For example, Rokt argued and submitted a sworn declaration stating that "Rokt's technologies and business practices were not available in the marketplace before being deployed by Rokt, and no other company other than Rokt was able to develop such an approach until AdsPostX [*i.e.*, MomentScience] recently launched its business." (ECF No. 9 at ¶41; *see also* Compl. ¶29 (same).) Consistent with this, its counsel repeatedly raised at oral argument that apart from MomentScience, no other "competing companies" offering the same services existed. (*See* ECF No. 46 ("PI Tr.") at 7:11-14 (Rokt's counsel: "And if it were possible to create an identical competing company by utilizing public information, then why hasn't anyone else done it?"); *id.* at 38:1-3 (Rokt's counsel: "To the point that all of this is just out there for the taking and anyone who works in this business would be able to note all of these things, why isn't anybody else doing it?").) In arguing that it would sustain irreparable harm in the absence of an injunction, Rokt argued and submitted evidence regarding its "market-leading position" (*see* ECF 9 at ¶54; *see also* ECF No. 8 at 10), and contended that MomentScience sought to "supplant Rokt in the marketplace." (*See* ECF No. 35 at 9.) Rokt moreover claimed multiple times to be "one-of-a-kind." (*See id.* at 7; *see also* PI Tr. at 47:1-3 (Rokt's counsel: "That is, my client, Rokt, has spent over a decade and millions of dollars to become the unique, successful, one-of-a-kind ad tech company that it is.").)

As early as the preliminary injunction phase of the case, Defendants sought to rebut Rokt's claims by citing its unfair and "anticompetitive" conduct. Specifically, they argued that Rokt's "unclean hands" barred its request for a preliminary injunction because of conduct that included "poaching [MomentScience's] customers, offering pricing it knows that [MomentScience] cannot

possible [*sic*] match."  (ECF No. 31 at 3; *see also id.* at 24 ("Defendants are also concerned that Rokt has been attempting to interfere with its client and partner relationships.")  Defendants submitted evidence as to their belief that Rokt was "offering pricing and guarantees that [MomentScience] cannot match" and "offering preferred pricing that [MomentScience] cannot possible [*sic*] compete with."  (ECF No. 31-1 at ¶¶116-17.)

During oral argument on Rokt's motion for a preliminary injunction, counsel for Defendants repeatedly reiterated that its defenses pertained to "anticompetitive conduct" on Rokt's part.  (*See* PI Tr. at 13:12-22 (Defendants' counsel: "Despite what plaintiffs' counsel has represented, your Honor, this case is about anticompetitive conduct by plaintiffs. As of last week, we lost a client to plaintiff who provided that client with a guaranteed rate on the addition of exclusivity. They are poaching our clients at the same time that they are trying to stop us from competing against them. . . . that is what this case is about, they admitted the only player in the space that prior to AdsPostX they dominated and were the sole provider of the service."); *id.* at 44:15-45:8 (Defendants' counsel, in response to a question regarding Defendants' "unclean hands" argument: "It's what we believe is a series of efforts to eliminate a competitor that we believe could rise to the level of antitrust violations[.] . . .We just lost a client to them that they took with a requirement that that client be exclusive to Rokt.").)  And counsel for Rokt noted its understanding of this argument.  (*See id.* at 10:19-21 (Rokt's counsel: "Defendants have ignored all of the public-interest arguments Rokt has made and instead seek to portray this case as involving anticompetition.").)

During the expedited discovery that took place during this phase of the case, Defendants diligently sought discovery in connection with these issues, which Rokt refused to provide and Defendants therefore sought to compel.  (*See* ECF No. 52.)  Defendants specifically raised that the

conduct of which it accused Rokt—engagement in exclusivity arrangements and below-cost pricing practices—implicated competition issues and the antitrust laws. (*See id.* at 6 ("As the acknowledged dominant market participant, such conduct smacks of anticompetitive misconduct in violation of antitrust laws.") (citing cases).) The Court did not issue a ruling on this request and therefore Rokt never provided the full scope of discovery sought. (*See* ECF No. 124 at 4:13-5:6.)

Defendants moved to dismiss this action in April 2023, shortly after filing their initial opposition to Rokt's preliminary injunction request. (*See* ECF No. 49.) Following transfer of this case last April (*see* ECF No. 126), this Court issued an order denying Defendants' motion to dismiss and granting in part and denying in part Rokt's request for a preliminary injunction on September 5, 2025. (*See* ECF No. 128.)

Defendants timely filed an answer on September 19, 2025. (*See* ECF No. 137.) In that answer, Defendants set forth an affirmative defense of unclean hands, alleging: "Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands or in pari delicto. Plaintiffs have engaged in brazen, unconscionable, and unfair anti-competitive conduct designed to push AdsPostX out of the post-transaction advertising marketplace, including, upon information and belief, by offering clients below-cost terms in exchange for their commitment to work exclusively with Plaintiffs. Plaintiffs have also poached AdsPostX's clients and prospective clients by, upon information and belief, offering below-cost terms in exchange for their commitment to work exclusively with Plaintiffs. As a result of Plaintiffs' brazen, unconscionable, and unfair conduct, AdsPostX is unable to compete with Plaintiffs in the post-transaction advertising space despite Plaintiffs' claims in this action being based on allegations that AdsPostX is unfairly competing against Plaintiffs and using Plaintiffs' trade secrets and confidential information to compete against them." (*See id.* at 28.) Defendants reiterated this position in the Case Management Plan,

including within their summary of claims, defenses, and relevant issues that "Plaintiffs have engaged in unconscionable and unfair anti-competitive conduct designed to push AdsPostX out of the post-transaction advertising marketplace, including, upon information and belief, by offering AdsPostX's clients and prospective clients below-cost terms in exchange for their commitment to work exclusively with Plaintiffs." (*See* Scheduling Order at 4.)

Consistent with the Scheduling Order, Defendants served Rokt with their initial requests for production on October 24, 2025. (*See* Powell Decl. Ex. C.)  These included several requests for production targeted to the competition issues identified by Defendants in their many previous submissions, such as a request for documents concerning assessments of the competitive landscape for the sale of post-transaction advertising services, documents sufficient to show Rokt's competitors in that market, documents sufficient to show its pricing, and documents concerning exclusive-dealing and guaranteed-rate arrangements. (*See id.* at Requests Nos. 53-57.)   In its responses and objections served on November 24, 2025, Rokt refused to produce any documents responsive to these requests. (*See id.* at Responses Nos. 53-57.)  In subsequent meet-and-confer correspondence and discussions, counsel for Rokt took the position that these Requests were not "specifically tailored to" Defendants' unclean hands defense but instead sought documents "regarding competition generally, or Rokt's contractual arrangements," and stated that "as the Court has already questioned the availability of Defendants' unclean hands defense [citing the order partially granting and partially denying Rokt's preliminary injunction request]," Rokt would "only consider a revised request targeted at this defense, as pled in Defendants' answer." (*See* Powell Decl. Ex. D at 5.)  Defendants' counsel informed counsel for Rokt during a meet and confer two days later that, in light of this response, Defendants would proceed with amending their answer to assert affirmative competition-related counterclaims. (*See* Powell Decl. Ex. E at 3.)

6

Defendants provided counsel for Rokt with their proposed amended pleading on January 26, 2026, and asked Rokt whether it would oppose a motion to seek leave to amend. Rokt indicated by email dated January 30, 2026, that it would do so. (*See* Powell Decl. Ex. F.) The parties thus exchanged letters outlining their respective legal and factual positions on the anticipated motion pursuant to Rule 2(b)(i)(1) of the Court's Individual Practices and met and conferred on February 9, 2026. (*See id.* Exs. G, H.) They were not able to reach resolution. This motion follows.

## II.    LEGAL STANDARD

When a party seeks to amend its pleading prior to the deadline set forth in an operative scheduling order, as is the case here,[1] Rule 15(a) governs its request. Rule 15(a) provides that "leave to amend a party's pleading 'shall be freely given when justice so requires,'" and "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also, e.g.*, *Sacerdote*, 9 F.4th at 115 (citation omitted) (stating Rule 15 imposes a "liberal" and "permissible" standard and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility"). "Mere delay" is not in and of itself reason to deny a motion pursuant to Rule 15(a), *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 339 (2d Cir. 2000), and "'[c]ourts typically find that the moving party did not *unduly* delay when leave to amend is sought within the deadline stipulated to by the parties and approved by the Court in a scheduling order.'" *Reyes v. Yager Esthetics Estetica*, No. 24-CV-3206 (JGK) (VF), 2025 LX 248847, at *3 (S.D.N.Y. Apr. 21, 2025) (citation omitted) (emphasis in original). Although the movant has the burden to explain any delay in seeking leave to amend, the non-movant has the burden of

---

[1] *See* Scheduling Order at 6(b) ("No amended pleadings may be filed after March 26, 2026. Any motion to amend after this date will need to meet the good cause requirements of Fed. R. Civ. P. 16.").

demonstrating that amendment is sought in bad faith or would be unduly prejudicial or futile.  *See AP-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB) (KHP), 2023 U.S. Dist. LEXIS 132558, at *12 (S.D.N.Y. July 31, 2023); *see also Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, No. 18 Civ. 8152 (JFK), 2021 U.S. Dist. LEXIS 208698, at *14 (S.D.N.Y. Oct. 27, 2021) (citations omitted).

### III.    ARGUMENT

#### A.  Defendants Have Not Unduly Delayed in Asserting the Counterclaims.

Defendants have not engaged in undue delay in bringing the Counterclaims, which they seek to assert only several months after filing their answer and which depend in part on and were prompted by events that postdate the filing of their answer in September.  As an initial matter, Defendants file this motion well in advance of the Scheduling Order's March 26, 2026 deadline for amendment, meaning that any supposed delay is not "undue."  *See Reyes*, 2025 LX 248847 at *3.  To the contrary, the record reflects ample support for the conclusion that, to the extent any delay exists at all, it is "due" and justified.  As is set forth in the preceding recitation of facts, Defendants have consistently taken the position from the very outset that Rokt's anticompetitive conduct is at issue in this case.  They have set forth that argument in several rounds of briefing and during oral argument and Court conferences and they have sought, and previously attempted to compel the production of, related discovery.  (*See supra*, at Facts.)  And, at their first opportunity to file a pleading in this action, they set forth an affirmative defense that, while denominated as "unclean hands," included specific allegations that echo those in the Counterclaims: that Rokt engaged in "anti-competitive conduct" within the "post-transaction advertising marketplace,"

specifically including offering clients "below-cost terms in exchange for their commitment to work exclusively with Plaintiffs." (*See* ECF No. 137 at 28.)[2]

It was only after Defendants timely served discovery requests and received Rokt's objections that Defendants were put on notice that Rokt did not consider these allegations sufficient to interject Rokt's anticompetitive conduct into this action. Specifically, after Defendants raised that Rokt's withholding in response to competition-related requests for production was not warranted, Rokt claimed in correspondence that the Court had "questioned the availability of Defendants' unclean hands defense" such that the requests were not sufficiently "targeted" at the defense as pled. (*See* Powell Decl. Ex. D. at 5.)[3] Defendants disagreed but to moot the issue informed Rokt that they intended to amend their answer to assert the Counterclaims, which indisputably put Rokt's anticompetitive conduct at issue in this action. (*See id.* Ex. E.) This took place immediately before the holidays. This motion follows approximately six weeks later, during which time Defendants prepared the Counterclaims and engaged in the meet-and-confer process required by this Court's Individual Practices. Thus, the timing with which Defendants seek to assert the Counterclaims does not reflect undue delay but instead a timely reaction to Rokt's own positions.

Further, the Counterclaims depend in some part on events that postdate the filing of Defendants' answer in September. Specifically, the Counterclaims cite several events in late 2025 that support their allegations, such as Rokt's November 2025 disclosure (and concurrent media reports) that it is preparing for a potential IPO in the near future (*see* Counterclaims ¶20) and Rokt's

---

[2] Defendants thereafter engaged new counsel, who brings this motion now. (*See* ECF No. 155.)

[3] Rokt's counsel referred here to this Court's order granting and denying in part Rokt's preliminary injunction motion (*id.*), in which the Court stated that it was not "persuaded" that "conduct … such as downloading AdsPostX's Shopify App and attempting to hire Nolz for a position at Rokt" "rises to the level of 'immoral, unconscionable conduct' that would preclude Rokt's requested injunctive relief . . . ." (ECF No. 128 at 40.) As this quotation shows, the Court did not address the antitrust-related conduct (exclusive dealing and below-cost pricing) that is described in Defendants' actual unclean hands defense and in the Counterclaims, both asserted after this Order issued.

CEO's disclosure in December 2025 that Rokt claims to have only ever lost a single customer to a competitor. (*See id.* ¶40.) The former supports MomentScience's allegations that Rokt is poised to recoup its losses from below-cost pricing (*see id.* at ¶¶54-57), an element of that claim, and the latter is important evidence as to the nature of competition in the market. (*See id.* at ¶40.) Accordingly, recent events inform both the Counterclaims and the timing with which Defendants seek to them, and no conclusion of undue delay is warranted. *See, e.g., Kate Spade LLC v. Vinci Brands LLC*, No. 23-cv-5409 (LGS) (VF), 2024 LX 181098, at *16 (S.D.N.Y. Oct. 9, 2024) (no undue delay where "evidence supporting [new claims] only recently came to light," noting that "most delays warranting denial of leave to amend are several years in length and are discussed in conjunction with prejudice or bad faith") (citation omitted); *see also, e.g., Pilkington*, 2021 U.S. Dist. LEXIS 208698 at *18 ("Thus, '[a]lthough some explanation must be provided to excuse a delay . . . even vague or "thin" reasons are sufficient, in the absence of prejudice or bad faith.'" (citing *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97-98 (S.D.N.Y. 2010)).[4]

### B. Rokt Has No Grounds to Suggest that Defendants Act in Bad Faith or with a Dilatory Motive.

There is moreover nothing to suggest that Defendants act in bad faith in seeking to assert the Counterclaims now. Bad faith exists where "a party conveyed 'a misleading impression that claims were fixed or where the earlier decision not to plead additional allegations "was a tactical one."'" *Dalewitz v. The Procter & Gamble Co.*, No. 22-cv-07323 (NSR), 2025 LX 273221, at *8 (S.D.N.Y. Mar. 11, 2025) (citing *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 340 (S.D.N.Y. 2024)). Rokt does not have grounds to contend that either situation exists here.

---

[4] To the extent that Rokt might suggest that Defendants' assertion of its unclean hands defense is indication that it could have and should have filed the Counterclaims with its answer, this overlooks both that the Counterclaims, as explained, depend in part on post-answer events and that "[c]ourts throughout this Circuit []have routinely 'permitted [parties] to amend their pleadings to assert new claims long after they acquired the facts necessary to support those claims.'" *Pilkington*, 2021 U.S. Dist. LEXIS 208698 at *18 (citation omitted).

Defendants have never conveyed a "misleading impression that claims were fixed."  To the contrary; as described above, Defendants have consistently asserted that Rokt's anticompetitive conduct was at issue in this case for nearly three years, up to and including describing its conduct as "antitrust violations."  (*See* PI Tr. at 44:15-45:8.)  It is simply not credible that Rokt believed that Defendants would never bring antitrust-related claims, and certainly there is no basis to suggest that Defendants gave it that "misleading impression."  *See, e.g.*, *AT&T Corp*, 714 F. Supp. 3d at 340 (no bad faith where the plaintiff had "described in general terms the factual allegations underlying its fraud claims as early as [two and a half years prior] at conference before the Court" and thus not "sought to hide its intention to plead many of the facts underlying [its] proposed counterclaims").  Nor would Rokt have any basis to suggest that Defendants made a "tactical decision" not to assert the Counterclaims earlier.  "Tactical" decisions indicating the existence of bad faith are those where the party has "wait[ed] until after the Court's judgment to alter substantially its legal theory."  *In re Gen. Elec. Co. Sec. Litig.*, No. 09 Civ. 1951 (DLC), 2012 U.S. Dist. LEXIS 100584, at *13 (S.D.N.Y. July 12, 2012); *see also, e.g.*, *State Trading Corp. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (bad faith in "tactical" decision not to include foreign law causes of action to avoid dismissal on forum selection clause or *forum non conveniens* grounds), *cf. Duling*, 265 F.R.D. at 98 ("A change in litigation strategy is a legitimate reason for seeking to amend a pleading under the liberal standard of Rule 15(a)[.]").  The Court has not issued any judgment since Defendants filed their answer and thus no "tactical" decision may be inferred.[5]

---

[5] To the extent that Rokt might suggest that Defendants made a "tactical" decision in response to the Court supposedly raising issues with its unclean hands defense in its decision on Rokt's preliminary injunction motion (*see* Powell Decl. Ex. H at 3), this neglects timing (Defendants filed their answer after the order was issued and thus do not bring this motion in "response" to the order) as well the consistency in Defendants' position that the antitrust issues have always been a part of this action.

Rokt suggested in meet-and-confer correspondence that it would argue the existence of bad faith because, it speculated, "MomentScience's belated assertion of a potential IPO, including making it a key feature of its theory against Rokt, raises the prospect that MomentScience may be asserting the Counterclaims for the purposes of intimidating Rokt, to leverage a potential settlement or dismissal of the case, or to hamper Rokt's ability to pursue an IPO." (*See* Powell Decl. Ex. H at 3.) But this is tail-wags-the-dog reasoning. As explained above, Rokt's recent public disclosure of an intent to pursue an IPO in the near future substantiates Defendants' legal theories and justifies its assertion of the Counterclaims at this time. (*See supra* (describing connection between IPO and risk of recoupment resulting in harm to competition).) This connection does not mean that Defendants move now to ***disrupt*** that IPO. This is sheer speculation that is belied by numerous other aspects of this motion, including (1) that Defendants have consistently made these same factual assertions since 2023, long before any planned IPO, and (2) that Rokt's own refusal to provide discovery on the grounds that Defendants' existing affirmative defense did not expansively spell out its misconduct motivated the motion. *See Walsh v. Versa Cret Contracting Co.*, No. 21-CV-05697 (JMA) (JMW), 2023 U.S. Dist. LEXIS 87517, at *14 (E.D.N.Y. May 18, 2023) ("Naked assertions of bad faith are insufficient."); *Dziennik v. Sealift, Inc.*, No. CV 2005-4659 (DLI) (MDG), 2009 U.S. Dist. LEXIS 141398, at *10 (E.D.N.Y. Apr. 1, 2009) ("speculative" claims of bad faith insufficient).

Rokt also suggested in pre-motion correspondence that Defendants' decision to assert the Counterclaims rather than to file a motion to compel discovery as to its refusal to product competition-related documents could evidence bad faith, suggesting that Defendants asserted counterclaims to "simply seek discovery to which [they] are not otherwise entitled." (*See* Powell Decl. H at 3.) But this unsupported and circular reasoning need not be credited. Defendants have

consistently taken the position that they are "entitled" to discovery on Rokt's anticompetitive conduct, dating all the way back to the preliminary injunction stage of the case. (*See supra*, at Facts.)  MomentScience's assertion of the Counterclaims, which are (as described below) well-grounded and build on and amplify the allegations set forth in Defendants' existing answer, solidifies that entitlement; it is not some circumvention of discovery standards.  Moreover, Defendants are entitled to craft their own legal strategy as they see fit, and to amend their pleading to conform with that strategy. *See Duling*, 265 F.R.D. at 98.  Rokt's suggestion that Defendants could have chosen another strategy (a motion to compel) and attempt to infer bad faith from its decision to amend instead flies in the face of that principle. *Cf. Brous v. Eligo Energy, LLC*, No. 24-cv-01260 (ER), 2025 LX 357444, at *11 (S.D.N.Y. Sept. 12, 2025) (no bad faith despite defendant's argument that plaintiff had amended because it had "fail[ed] to expand discovery").

### C.  Rokt Cannot Demonstrate that It Will Sustain Prejudice from Amendment.

Next, Rokt will be unable to carry its burden of showing that the assertion of the Counterclaims at this stage of the case will result in undue prejudice to it.  "In determining what constitutes 'prejudice,' courts consider whether the assertion of the new claim would, among other things, require defendant to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 38 (S.D.N.Y. 2016) (citing *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010)).  Such expenditure or delay must be "significant;" that it is additional is not enough.  *See AP-Fonden*, 2023 U.S. Dist. LEXIS 132558 at *16  (citing *Mason Tenders*, 318 F.R.D. at 38).

Neither prong is implicated here.  As to the latter prong, the new claim will not "significantly delay resolution" of the dispute (and indeed, likely will not delay resolution at all).  Defendants seek leave to assert the Counterclaims with nearly six months left in fact discovery

(*see* Scheduling Order, ¶7(a)), and Defendants have not sought to amend the Scheduling Order. Rokt would therefore has no basis to suggest that the Counterclaims would "significantly delay resolution" of this dispute; assuming Rokt's good faith engagement in discovery processes, they may easily be adjudicated alongside Rokt's existing claims. *See, e.g.*, *Ideavillage Prods. Corp. v. Copper Compression Brands LLC*, No. 20 Civ. 4604 (KPF), 2021 U.S. Dist. LEXIS 208659, at *14 (S.D.N.Y. Oct. 27, 2021) (holding that where, as here, the parties had exchanged documents but depositions had not been taken or scheduled, "discovery is ongoing and ample time remains before trial, [therefore] allowing the amendment would not significantly delay the resolution of the dispute").

And as to the former prong, the Counterclaims will not require Rokt to expend significant "additional" resources on discovery. As is described above, Rokt's competition-related conduct (*e.g.*, its "offering clients below-cost terms in exchange for their commitment to work exclusively with Plaintiffs," for example, which conduct is at the heart of the Counterclaims but also set forth verbatim in Defendants' current answer) has been at issue in this case for nearly three years, and Rokt is therefore already obligated to expend resources on discovery relating to it. Rokt cannot weaponize its improper refusal to provide that discovery, which was what in part motivated Defendants to seek leave to assert the Counterclaims, by arguing that the Counterclaims require it to conduct significant "additional" discovery. Indeed, Rokt's own claims, including a claim of "unfair competition," themselves implicate competition-related issues and require related discovery. The "additional" discovery that the Counterclaims require is marginal compared to what is already (and should be already) disclosed in the case. *See, e.g.*, *Ideavillage*, 2021 U.S. Dist. LEXIS 208659 at *14 (allowing proposed amendment where it "st[ood] to expand the scope of discovery to some extent" but did not "alter 'the focus of the entire case'") (citation omitted).

14

### D.  Rokt Will Be Unable to Show that the Counterclaims Are Futile.

Finally, Rokt will not be able to carry its burden of showing that the Counterclaims are futile.[6]  In assessing whether a proposed amended pleading is futile, courts look to whether it could withstand a motion to dismiss pursuant to Rule 12(b)(6).  *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Thus, the proposed pleading need only set forth "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and, as this Court has recognized, "the Court accepts as true the nonconclusory factual allegations in the [proposed amended pleading] and draws all reasonable inferences in the Plaintiff's favor."  *Great W. Ins. Co. v. Graham*, No. 18-CV-06249-LTS-SN, 2026 LX 66393, at *27 (S.D.N.Y. Jan. 6, 2026).

Rokt will be unable to show that the Counterclaims fall short of this standard.  In the Counterclaims, MomentScience sets forth antitrust claims based on Rokt's anticompetitive conduct, and specifically its engagement in exclusive-dealing arrangements and use of predatory below-cost pricing.  These include claims under both Section 2 (actual and attempted monopolization) and Section 1 (exclusionary contracts) of the Sherman Act.  To show a violation of Section 2, a defendant must allege "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  To establish a Section 1 claim, MomentScience must plausibly allege facts sufficient to show: (i) "'a combination or some form

---

[6] When asked for the factual and legal bases for this position pursuant to Rule 2(b)(i)(1) of the Court's Individual Practices, Rokt set forth three paragraphs of conclusory assertions that the Counterclaims (which had been provided to it in advance) failed to state a claim, repeating the same language from paragraph to paragraph, and took the position that it was "not Rokt's obligation to write your Counterclaims for you or to explain the specific defects in your proposed Counterclaims as drafted."  (*See* Powell Decl. Ex. H at 1-2, 3.)

of concerted action between at least two legally distinct economic entities'" that (ii) "'unreasonably restrains trade.'"  *Particle Health Inc. v. Epic Sys. Corp.*, No. 24 Civ. 7174 (NRB), 2025 LX 335977, at *29 (S.D.N.Y. Sep. 5, 2025) (citation omitted).

MomentScience does both through the Counterclaims.  For Section 2, MomentScience begins by offering numerous allegations suggesting that Rokt has monopoly power in a relevant market of post-transaction advertising services.  First, the Counterclaims define that market, explaining why other forms of ecommerce advertising are not reasonably interchangeable with post-transaction advertising and therefore other ecommerce advertising services or platforms are not reasonably interchangeable with post-transaction advertising services or platforms.  (*See* Counterclaims ¶¶24-26.)  MomentScience next describes the numerous and significant barriers to entry in that market, which are of the form routinely recognized by courts to constitute cognizable barriers, such as the existence of network effects and the need for sunk-cost investment to enter.  (*See id.* ¶¶28-33.)  And, it alleges that Rokt holds monopoly power within that market, citing Rokt's claims during the preliminary injunction stage of the case that it invented this category of ecommerce advertising and was alone in the market before MomentScience entered it (*see id.* ¶34), echoing the numerous statements in its briefing and made by its counsel described above.  MomentScience alleges that Rokt has maintained its market-dominant position since then, citing publicly available information about the scope of its business and its customer base and comparing that to publicly available information about its only other notable competitor (*id.* ¶¶35-40) and consolidation of the market through acquisition of competitors (*id.* ¶¶41-42). That information, and MomentScience's own familiarity with the market and dynamics therein, informs its conclusion that Rokt holds a 90%+ share of the market in question.  This is well above the market share percentages that courts regularly recognize as sufficient to establish alleged market power.

16

*See, e.g.*, *Particle Health*, 2025 LX 335977 at \*40 (noting allegation of 90% market share "suffices to raise an inference of monopoly power," "even without consideration of other market characteristics") (citations omitted).

MomentScience has further identified "improper conduct that has or is likely to have the effect of controlling prices or excluding competition," *i.e.*, the second prong of a Section 2 violation. *Id.* at \*41 (quoting *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Takeda Pharm. Co. Ltd.*, 11 F. 4th 118, 137 (2d Cir. 2021)). Specifically, it alleges that Rokt has engaged in predatory below-cost pricing practices and exclusive-dealing arrangements, citing both to Rokt's own public disclosures and evidence that it has received regarding them, as well as its firsthand encounters with these practices and the industry experience informing its reasonable inference that they are taking place. (*See* Counterclaims ¶¶43-52, 61-71.)

Both exclusive-dealing arrangements and the use of predatory below-cost pricing practices are "'"common" forms of anticompetitive conduct.'" *Reiss v. Audible, Inc.*, No. 1:24-cv-05923 (JLR), 2025 LX 192043, at \*18 (S.D.N.Y. June 11, 2025) (citation omitted). In pre-motion correspondence, counsel for Rokt suggested otherwise, citing publications by the Federal Trade Commission and the Department of Justice on both topics. (*See* Powell Decl. Ex. H at 2-3.) To be sure, neither exclusive dealing nor below-cost pricing practices are per se unlawful, and if the Counterclaims were premised on such practices alone, Rokt might have an easier time carrying its burden to demonstrate their futility. But Rokt neglects that its status as a professed monopolist, which it proudly laid claim to many times before this Court and which is supported by the allegations of the Counterclaims, renders conduct that might otherwise be permissible a violation of the law. On exclusive dealing, "[t]he primary antitrust concern with exclusive dealing

arrangements is that they may be used by a monopolist to strengthen its position, which may ultimately harm competition." *United States v. Visa, Inc.*, 788 F. Supp. 3d 585, 609 (S.D.N.Y. 2025). MomentScience alleges that Rokt has done just that, leveraging its market power in the two-sided market in which it operates to lock up its customers, exacerbating the natural barriers to entry into that market by perpetuating the "chicken-and-the-egg" problem presented by network effects, and entrenching its monopoly position. (*See* Counterclaims ¶¶43-50, 55-59.) MomentScience offers specifics explaining how this has had the effect of foreclosing competition, citing to, *e.g.*, the fact that Rokt claims to have only ever lost a ***single*** major customer to a competitor (reflecting the lack of competition in the market, *see id.* ¶44), and that Rokt has sought to lock up an advertiser (Capital One Shopping) "responsible for a disproportionately high share of advertiser spend on post-transaction advertising services." (*Id.* ¶¶ 67-69.) These facts make it plausible that Rokt's exclusive dealing arrangements constitute "willful acquisition or maintenance of [monopoly] power" in violation of Section 2. *See Visa*, 788 F. Supp. 3d at 610 (citation omitted).

To succeed using its below-cost pricing theory, MomentScience must demonstrate "'(1) that the prices complained of are below an appropriate measure of its rival's costs,' . . . and (2) that the predatory rival has a 'dangerous probability' of recouping its investment through a below cost pricing scheme." *Virgin Atl. Airways v. British Airways Plc*, 257 F.3d 256, 266 (2d Cir. 2001) (citation omitted). MomentScience plausibly alleges both in the Counterclaims. Although denied the benefit of discovery, MomentScience cites to the economic nature of the two-sided platform that both it and Rokt operate, its own knowledge of the dynamics of that market, reports from customers receiving the subject pricing offers, and Rokt's public disclosures that, *e.g.*, the "retailers" on one side of its two-sided platform "receive $7 of every $8 generated" (Counterclaims ¶¶17-18) to conclude that Rokt is extending below-cost offers to its customers (*see id.* ¶¶50-53,

62-65.)  It has further plausibly alleged why a "dangerous probability" of recoupment exists (*id.* ¶94), *i.e.*, Rokt's impending IPO will subject it to profitability pressures that are currently absent or minimal (*see id.* ¶¶53-57).

For the same reasons, MomentScience has adequately alleged a Section 1 claim as well, and Rokt therefore cannot show that that claim is not futile.  MomentScience alleges the existence of "concerted action between at least two legally distinct economic entities" in the form of Rokt's exclusive-dealing contracts with its retailer and advertiser customers.  (*See, e.g.*, Counterclaims ¶¶44-47, 66-70.)  And, it alleges that these arrangements foreclosed competition in a manner that adversely affects competition, citing to, *e.g.*, Rokt's "lock-up" of two large advertisers "responsible for a disproportionately high share of advertiser spend on post-transaction advertising services," leading to "pernicious" "network effects from retailers that are dismayed to lose access to a high-value advertiser, with the ultimate result that Rokt's competitors cannot enter or expand within the market."  (*See* Counterclaims ¶¶67-70.)  It further alleges that there is a dearth of competitors within the market, and Rokt publicly claims to have only ever lost a single significant customer to one such competitor, evidencing how Rokt's actions have "foreclosed" and "adversely affect[ed]" competition."  (*See id.* ¶¶35-36, 40.)  This is sufficient.  *See Visa*, 788 F. Supp. 3d at 609-11 (noting that plausible exclusive dealing allegations stated claims under both Section 1 and Section 2).

MomentScience also plausibly alleges standing to bring these antitrust claims.  "To satisfy antitrust standing at the pleading stage a plaintiff must plausibly allege two things: (1) 'that it suffered a "special kind of antitrust injury,"' and (2) 'that it is a suitable plaintiff to pursue the alleged antitrust violations and thus is an "efficient enforcer" of the antitrust laws.'"  *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 62 (2d Cir. 2019) (citation omitted).  MomentScience does both.  It explains in the Counterclaims that Rokt's anticompetitive conduct

has directly led it to experience "higher costs to enter and expand within the market, lost revenue and profits, decreased future revenue opportunities, and increased operating costs," including by describing its loss of specifically-identified customers to Rokt as a result of the complained-of conduct.  (Counterclaims ¶72; *see id.* ¶¶61-65, 70.)  This well suffices to show that it has suffered antitrust injury.  *See, e.g.*, *Particle Health*, 2025 LX 335977 at *46 (allegations of having lost "both customers and revenue" sufficient to allege antitrust injury; "[a] competitor's '[e]xclusion from a market is a conventional form of antitrust injury" because it is "exactly the type of injury that antitrust laws were designed to prevent and flows from the competition-reducing aspect of [defendant's] conduct."'") (citation omitted).

MomentScience also demonstrates that it would be an "efficient enforcer" of the antitrust laws.  Whether a plaintiff would be an efficient enforcer depends on "(1) 'the directness or indirectness of the asserted injury,' (2) 'the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement,' (3) 'the speculativeness of the alleged injury,' and (4) 'the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries.'"  *IQ Dental Supply*, 924 F.3d at 65 (citation omitted).  Each factor supports that MomentScience adequately alleges standing.  As described above, it alleges a direct injury—the loss of individual customers to Rokt as a result of Rokt's anticompetitive conduct.  MomentScience is also "sufficiently motivated" under the second factor, as it alleges direct injury and further alleges that other parties who experience Rokt's conduct (*e.g.*, its customers who are enticed with or compelled to accept exclusivity arrangements and below-cost pricing) are not adequately incentivized to address such conduct either directly or via litigation: "[B]ecause there are so few competitors for the reasons described above—natural barriers to entry and Rokt's acquisition spree, supporting its

monopoly—there are few apparent downsides to an advertiser or a retailer accepting Rokt's demands for exclusivity; it is only blocked from working with a handful of companies. But this 'easy choice' is deceiving; Rokt's exclusivity demands simply ensure that its competitors cannot catch the toehold in the market that would be necessary for them to pose a more serious competitive threat to Rokt. Thus, Rokt is safe from competitive pressures that would otherwise force it to compete on price or the innovation and quality of its services, to the ultimate detriment of both its advertiser and retailer customers." (Counterclaims ¶48.) *See IQ Dental Supply*, 924 F.3d at 68 (second factor weighed in favor of plaintiff as efficient enforcer where plaintiff was "'immediate victim'" of alleged conduct and "suffered a direct loss of sales") (citation omitted). Third, MomentScience's claimed damages are not speculative; it identifies at least two specific customers (one for whom the "contract was nearly finalized and ready for signature," allowing MomentScience to estimate the revenue that was foregone) lost to Rokt as a result of its anticompetitive conduct. (Counterclaims ¶¶62-66.) Finally, there is little prospect of duplicative recovery or difficulty in apportioning damages if MomentScience brings its claims, given the direct nature of the injury it alleges. *See IQ Dental Supply*, 924 F.3d at 68. The Counterclaims thus demonstrate that MomentScience has standing to bring its antitrust claims.

Rokt will therefore be unable to carry its burden of demonstrating that assertions of the Counterclaims would be futile. Rokt seemingly challenged the facts underlying the Counterclaims in pre-motion correspondence (*see* Powell Decl. Ex. H at 3 ("we do not believe any facts exist that could properly state such claims for relief")), but overlooks that "'[f]utility is generally adjudicated without resort to any outside evidence,' and the court must accept all facts pleaded as true." *GMO Gamecenter USA, Inc. v. Whinstone US, Inc.*, No. 22-CV-5974 (JPC) (KHP), 2025 LX 310188, at *6 (S.D.N.Y. Aug. 26, 2025) (citation omitted). That conclusion applies with special force given

21

both Rokt's own improper denial of the discovery necessary to ascertain these "facts" (*see supra*) and the nature of the Counterclaims, *i.e.*, antitrust claims implicating secretive business-to-business arrangements. As courts have repeatedly recognized, "'"there are no heightened pleading requirements for antitrust cases," and "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."'" *Reiss*, 2025 LX 192043 at \*16 (citations omitted). MomentScience respectfully submits that, correspondingly, a motion to amend to assert antitrust claims in advance of receipt of related discovery should likewise be denied "sparingly," and Rokt will be unable to carry its burden to show that such is merited here.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that they be given leave to amend their answer.

Dated: February 11, 2026

Respectfully submitted,

AdsPostX, Inc. d/b/a MomentScience, Jon Nolz, and Surojit Niyogi,

By their attorneys

*/s/ Michael M. Powell*
Michael M. Powell (Bar No. 5263876)
    michael@gishpllc.com
Andrew D. Gish (Bar No. 4918454)
    andrew@gishpllc.com

GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(212) 518-2000

## **WORD COUNT CERTIFICATION**

I hereby certify pursuant to Local Civil Rule 7.1(c) and Rule 2(h) of the Court's Individual Practices that this memorandum of law contains 7,155 words.  This complies with Rule 2(h) of the Court's Individual Practices, which allows opening memoranda of law in support of motions to not exceed 8,750 words. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

/s/ *Michael M. Powell*
Michael M. Powell

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2026, I caused a true and correct copy of the foregoing document and exhibits referenced therein, to be filed by the Court's CM/ECF filing system, which will send electronic notification of such filing to all counsel of record.

/s/ *Michael M. Powell*
Michael M. Powell